### JEFFREY MANUFACTURING CO v YATES

Ohio Appeals, 2nd Dist, Franklin Co

No 2211. Decided Nov 9, 1932

HORNBECK, J.

The determination of this case brings into application §1465-82, GC.

"In cases in which compensation or disability on account of the injury has been continuous to the time of the death of the injured person, and the death is the result of such original injury, compensation shall be paid for such death as though the same had occurred within the two years hereinbefore provided, deducting from the final award therefor the total amount theretofore paid on account of total or partial disability on account of such injury."

Thus, under this section it was incumbent upon the claimant to establish that the injury which Mr. Yates suffered on March 2, 1927, caused disability which had been continuous to the time of his death; and, second, that the death of Mr. Yates was caused or accelerated by reason of the injury.

Stephen A. Sharp, Columbus, for the Jeffrey Manufacturing Company.

Cowan, Adams & Rapp, Columbus, and Simon P. Dunkle, for defendant in error.

The plaintiff in error claims that proof is not made of either of the foregoing requisites. Other questions are presented in the brief.

The testimony taken before the Commission upon the rehearing included statements of a number of friends of decedent

who had known him well in his lifetime. They testified at length respecting Mr. Yates' health both before and after his injury. Several of them in answering questions used expressions which they claim Mr. Yates had made respecting his physical condition after the injury; the import of which was that he had not recovered from the effects of his accident.

At the time this testimony was taken no objection was interposed to the separate questions when propounded and answers given. At the conclusion of this testimony there was an exception to its reception and a motion to strike it out, which the referee overruled. The same procedure was followed in the trial court but specific objections were made to other questions and answers, which objections had not been interposed on the rehearing before the Commission. It is objected that the court erred in not striking all of this class of testimony because incompetent, that the hearsay testimony though not reached by objection, has no probative value, and that any incompetent statement can be stricken in Common Pleas Court though objection there made for the first time.

We are of opinion that in all particulars the trial court was correct in its rulings. If any part of an answer to a proper question is admissible, there is no error in refusing to sustain a general objection thereto. If any part of the answer is irrelevant or incompetent the objection should be directed to that part.

Having failed to so interpose objections at the rehearing, it is too late to put them in proper form upon trial in Common Pleas Court. That portion of §1465-90, GC, applicable reads:

"Within ten days after the filing of the answer the Industrial Commission shall certify to such court a transcript of the record of such rehearing, and * * * the jury, under the instructions of the court, * * * shall determine the right of the claimant to participate * * * in such fund upon the evidence contained in such record and no other evidence; but the court may exclude from evidence such portions of the transcript which are not competent, material or relevant evidence and to which objection was made or exception taken at such rehearing before the commission and may admit in evidence such competent, material or relevant evidence as was excluded by the Commission at such rehearing, over the objection and exception of the party offering the same."

It is the meaning of this portion of the statute just quoted that of the record transmitted to the trial court by the Industrial Commission, so much of the evidence shall be admitted as is competent and relevant under the objections made thereto and exceptions saved at the time of the re-hearing. Counsel for the employer having failed to put his objection to the testimony before the Commission in form to reach the objectionable matter in the answer, can not for the first time properly raise the question and invoke the action of the trial court on appeal.

Joseph Morris v Faurot et, 21 Oh St, 155.

Kent v State, 42 Oh St, 426.

City of Circleville .v Sohn, 20 O.C.C., 368.

Railway Company v Godwin, 12 O.C.D., 538.

Voorhees Rubber Co. v Union Supply Co., 12 O.C.C. (N.S.), 243.

We likewise are in agreement with the counsel for defendant in error that hearsay testimony, though of a very low character, does have some probative effect.

Thompson v Ackerman, 21 O.C.C., 740-745.

Lippert v Page, 13 O.C.C., (N.S.), 105-107.

Industrial Commission v Piasick, 23 OLR 489, 10 Abs 437. Affirmed 109 Oh St, 570.

The testimony of these witnesses who were acquainted with Mr. Yates in his lifetime touching his physical condition before and after his injury, was competent for two reasons; first, as bearing upon the question whether or not he had any heart impairment prior to his injury; and, second, whether or not be could work after his injury with the same degree of ease and competency as before. If Mr. Yates was affected after his injury in the manner described by these witnesses, it is highly probable that this condition was present when he was at work in the factory of his employer.

The answer of the jury to interrogatory of plaintiff in error, (No. 4) is conclusive, if any evidence to support it, that Benjamin Yates did not at any time after his injury do his work with the same ease and competency that he had done it prior to March 2, 1927. The testimony of these lay witnesses for the claimant alone, if true, and the jury had a right to believe them, supported the answer of the jury to the foregoing interrogatory.

The principal question and the one which has given this court its greatest concern relates to the proof on the question, viz., was there causal connection between the

injury of March 2, 1927, and the death of Mr. Yates? It is claimed by plaintiff in error that there is no evidence to support this claim, and if the court should find that there is some evidence, that the verdict of the jury is manifestly against the weight thereof.

Suffice to say that we are convinced that there is some evidence tending to support the necessary proof incumbent upon defendant in error to make. The answer of Dr. W. Eugene Masters to the hypothetical question of counsel for defendant in error in itself was sufficient to carry the case to the jury. Certain facts are practically undisputed, viz., that the injury which Mr. Yates suffered was severe; that it resulted in a pelvic injury and separation of the symphysis, a fracture of the right ilium and a fracture of the second toe; that prior to the injury Mr. Yates was in good health, a strong, robust man; that his work was heavy; that the accident which caused his injuries resulted from one or more flasks, weighing approximately 100 pounds each, falling upon him from a truck from a distance of from ten to fifteen feet above him; that as a result of his injury he was confined to the hospital for more than fifty days; that sometime thereafter he returned to his regular work and was so employed for almost three years until his death; that he lost during this period but a total of eight days; that for several months after he went back to work and for almost a year before his death he was provided with a helper. (Under the evidence this action of the company may be construed for or against the theory that he had completely recovered, although the report of Dr. Means supports the theory that the helper provided Mr. Yates immediately on his return to the factory was because of probable weakness or incapacity to do the work as before. The state of health of Mr. Yates after the accident is in sharp dispute. Mr. Yates died on Monday morning, January 13, 1930, suddenly, having shown some signs of illness on Sunday, the 12th of January. He had worked the full work day on Saturday, the 11th of January. The cause of his death was acute dilatation of the heart and a thrombus in the upper branch of the right pulmonary artery; that a thrombus is caused by an embolus which becomes lodged in the blood stream. The record sets forth the post mortem findings of Dr. Ernest Scott which is most comprehensive. The autopsy was made in the presence of Dr. George W. Mosby, who testified for the defendant in error.

Dr. Mosby says that a thrombus in the pulmonary artery could bring about an acute dilatation of the heart, but he is agreed with the other doctors that it could only be formed by an embolus and he is not prepared to say how long before death the thrombus was formed. He also says that the autopsy showed that the, healing in the pelvic region was complete, that it was smooth inside and that they found no blood vessels that were injured and no infection. The report of Dr. Scott is to like effect, and Dr. Masters only had before him the report of Dr. Scott on the question of the condition of Mr. Yates after his death.

Dr. Masters, after answering the hypothetical question of counsel for defendant in error in the affirmative, says that the thrombus was organized some time before death, but he could not say how long.

No one says that an embolus occurring at or near the time of the accident could remain in the blood stream until the date of death without lodging and causing trouble or without being absorbed. It appears that the right ramus was displaced two centimeters, which would seem to offer a possibility of producing inflammation, but that such was the effect no witness testifies, and this condition was not included in the hypothetical question propounded to Dr. Masters. Dr. Masters advances two theories upon which he predicates his answer to the hypothetical question.

(1). "A thrombin to form, which breaking down from its site, a formation might cause it to travel through the venous channels to the right side of the heart or from the right side of the heart and into the pulmonary artery. * * * A certain amount of irritation would naturally result at the site of motion of the separated symphysis, which might possibly cause injury to the wall or veins in that region, permitting a clot to form by the mechanism previously described. This clot might form in a very small vessel and might become dislodged, in fact would be especially prone to become dislodged if motion in that area was abnormal. It might pass from the smaller to the larger veins, eventually reaching the right side of the heart passing through the right side of the heart and into the pulmonary artery, from which it might pass to either right or left pulmonary artery, where it would eventually reach a point beyond which it could not proceed or might become caught at the point where an

artery divides into smaller branches. If such a thing happened further clot formations could and probably would take place at the site at which the embolus or section of embolus had lodged."

It will be noted that all the premises upon which the Doctor bases his conclusions are mere possibilities and do not reach to the degree of certainty required in these cases, viz., probability. In fact, the first reason which the Doctor assigns is highly conjectural, and he advances it as nothing more than a possibility. He does not say that there had not been a complete healing of the pelvic region and admits that an embolus, if it came from that region, must have been produced at or about the time of the injury or as a result of infection. It is suggested that some break in the abdominal vessels might have been the source of a blood clot but such a break does not appear. He does not say that it would be possible for an embolus to remain quiescent and ineffective in the blood stream, for the period from the injury to death. Nor does he base his finding upon any infection in the pelvic region.

At page 50, on cross examination, this question was put to Dr. Masters and answer made:

"Q. So that therefore you can conscientiously say that if a person lives almost three years after an injury the likelihood of an embolus coming from that injury is almost or absolutely remote. That is true, is it not?
A. I believe that is true, yes."

And later, on the same page,

"A. If you say a thing is absolutely healed and can prove absolutely that it is healed, including all small vessels, yes.
"Q. And especially almost three years having elapsed since the injury?
"A. It will decrease the probabilities, yes —obvious.
"Q. In fact wouldn't it almost remove the possibilities—that length of time?
"A. I believe it would almost remove the possibility."

The first theory does not, in our judgment, find sufficient support in the record to sustain the judgment. The second theory is:

That Mr. Yates being 59 years old as of the date of the injury, suffered a severe strain of the heart and as it had little reserve margin the pain incident to the injury caused a rise in blood pressure, put extra work on it and caused heart failure of the congestive type, and some dilatation and stretching of the various chambers; that by reason of the weakness of the heart and stretching of its muscles, it did not expel all of the blood with each contraction and that thereby a clot may have formed, and that this clot coming from the dilated right auricle of the heart could have been the source of the clot which lodged in the pulmonary artery, and was the immediate cause of death.

Dr. Masters further says that a clot so formed is not unusual—intracardiac thrombus—and that, in his judgment, the second theory which he propounded is the more probable explanation of the cause of death of Mr. Yates. There is no direct refutation of this testimony of Dr. Masters, except such as may be found on his cross-examination. To us as laymen it would seem unusual that blood could become sufficiently quiet in an auricle of the heart to permit of the formation of a clot, but this subject is peculiarly within the realm of expert testimony which must come from the medical profession. It is evident from the testimony of the Doctors in behalf of plaintiff in error that they offer no explanation of the source of the clot which was, at least, a contributing cause to the death of Mr. Yates. The testimony of the lay witnesses who said that Mr. Yates, at all times after his injury suffered from a condition which obviously was heart trouble, is convincing that his injury contributed to and accelerated his death by heart trouble. Although we may not have reached the same conclusions we can not say that the jury on the evidence of the lay witnesses and the autopsy did not have the right to accept the second theory of Dr. Masters as to the probable cause of Mr. Yates' death.

The judgment of the trial court will, therefore, be affirmed.

ALLREAD, PJ, and KUNKLE, J, concur.